**AFFIRM in Part, REVERSE and RENDER in Part, and REMAND; and Opinion Filed October 7, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01406-CV

**CITY OF DALLAS AND LARRY HOLMES, IN HIS OFFICIAL CAPACITY AS CHIEF BUILDING OFFICIAL FOR THE CITY OF DALLAS, Appellants**

**V.**

**EAST VILLAGE ASSOCIATION, Appellee**

On Appeal from the 162nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-14-07239

## OPINION

Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Schenck

We withdraw our opinion and vacate our judgment of July 21, 2015, and deny the City of Dallas' Motion for Rehearing. We substitute this opinion in its place. In this interlocutory appeal, the City of Dallas challenges the trial court's order denying its plea to the jurisdiction by which it sought dismissal of a lawsuit brought by the East Village Association ("Association") challenging the validity of a City ordinance.[1] On appeal, the City argues the trial court erred by denying its plea because: (1) the Association lacks standing to challenge the ordinance; and (2) the Association failed to allege sufficient facts to invoke a waiver of the City's immunity under

---

[1] While Larry Holmes, as the Chief Building Official for the City of Dallas, is identified as an appellant in this case, during oral argument counsel for Holmes and the City indicated that the issues presented concern only the City's plea to the jurisdiction and represented that Holmes is not requesting any relief from this Court. We therefore take no action relative to Holmes's plea below, and leave that portion of the order undisturbed.

the Uniform Declaratory Judgments Act or to confer jurisdiction to grant injunctive relief. We affirm in part and reverse and render in part.

## BACKGROUND

This case concerns the City's adoption of Ordinance No. 29019 (the "Ordinance"), which changed the zoning of property located east of North Central Expressway between Haskell and Carroll Avenues ("East Village") to allow for the construction of a Sam's Club store. More specifically, the Ordinance changed the zoning to allow, among other uses, a general merchandise or food store 100,000 square feet or more ("big box" store) without a specific use permit ("SUP"). The Dallas Development Code allows a variety of retail uses in Mixed Use 3 Districts, adopted by the Ordinance, as a matter of right, but "big box" stores are allowed only with a SUP, which carries its own requirements for issuance. DALLAS, TEX., DEV. CODE §§ 51A-4.125(f)(2)(J), 51A-4.219(a)(2)—(4).[2]

Contending they were surprised and upset by the news that a Sam's Club store was coming to their neighborhood, property owners near East Village formed the Association to challenge the sufficiency of the notice given of the proposed change in zoning and to advocate for the future land use and zoning of East Village.

### NOTICE REQUIREMENT

A municipality is required to give written notice of each public hearing before the zoning commission on a proposed change in a zoning classification. The notice is to be sent to each owner of real property within 200 feet of the property on which the change in classification is proposed. TEX. LOC. GOV'T. CODE ANN. § 211.007(c) (West 2008). The Dallas Development

---

[2] In particular, an applicant for a SUP must comply with all zoning amendment procedures for a change in zoning classification. *Id.* § 51A-4.219(a)(4). The City must issue a separate ordinance for each SUP granted, and the City is not to grant a SUP for a use except upon a finding that the use will: (1) complement or be compatible with the surrounding uses and community facilities; (2) contribute to, enhance, or promote the welfare of the area of request and adjacent properties; (3) not be detrimental to the public health, safety, or general welfare; and (4) conform in all other respects to all zoning regulations and standards. *Id.* § 51A-4.219(a)(2)—(3).

Code expands this notice requirement to owners of real property within 500 feet when the zoning change is for a planned development, which is the case here. DALLAS, TEX., DEV. CODE §§ 51A-1.105(a)(4), 51A-4.701(b)(5).

The requisite details of the notice of hearing are not specified by statute. The general rule is that the notice is sufficient if it reasonably apprises those for whom it was intended of the nature of the pending proposal to the extent that they can determine whether they should be present at the hearing. *Midway Protective League v. City of Dallas*, 552 S.W.2d 170, 175 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.). While the notice need not be complete and perfect in every respect, it must be of such a character to afford the recipient an opportunity to oppose the measure if he desires. *Id., see also, e.g., Dacus v. Parker*, No. 13-0047, 2015 WL 3653295, at *6 (Tex. June 12, 2015) (notice should be definite and certain so as not to mislead the recipient).

### NOTICES GIVEN

The City gave the following written notices of hearings to owners of property within 500 feet of East Village prior to adopting the Ordinance.

The Dallas City Plan Commission ("Planning Commission"), on May 2, 2013, and City Council, on May 22, 2013, will consider:

> An application for 1) a Planned Development District for MU-3 Mixed Use District uses on property zoned a GO(A) General Office District, an MU-3 (SAH) Mixed Use District (Affordable) and a portion of Subdistrict E in PDD No. 305, Cityplace, on the northeast corner of North Central Expressway and North Carroll Avenue and for 2) a new subdistrict within Planned Development District No. 305 on property zoned Subdistrict E within the PDD on the northeast corner of North Central Expressway and North Haskell Avenue.
>
> A Planned Development District is proposed on a ± 16.158-acre portion of the request site to accommodate a retail development with design standards. A new subdistrict within PDD No. 305 is proposed on a ± 10.595-acre portion of the request site to create a "data center" use and associated parking ratio. This will allow existing office buildings to be utilized for that purpose.

–3–

None of the property owners entitled to notice appeared at the hearings. The Planning Commission voted to recommend approval of the new planned development with the removal of the condition that the owner obtain a SUP for the construction of a "big box" store. The City Council, upon the recommendation of the Planning Commission, approved the requested change in zoning and adopted the Ordinance authorizing uses permitted in MU-3 Mixed Use Districts as well as a "big box" store.

## THE LAWSUIT

The Association filed suit against the City and others seeking a declaration that the Ordinance is void for failure to give residents notice of the waiver of the SUP requirement for a "big box" store and seeking to enjoin the City and others from taking ministerial actions in connection with development of East Village in accordance with the revised plan.

The City filed a plea to the jurisdiction contesting the trial court's subject-matter jurisdiction. The trial court denied the plea, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2015) (authorizing interlocutory appeal from order denying a plea to the jurisdiction by a governmental unit).

### STANDARD OF REVIEW

Whether subject-matter jurisdiction exists is a question of law that can be challenged, as it was here, by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). On appeal, we review an order denying a plea to the jurisdiction de novo. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

Generally, a plea to the jurisdiction may challenge the sufficiency of the claimant's pleadings or the existence of necessary jurisdictional facts. *See Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 110 n.53 (Tex. 2014). When the plea challenges the claimant's pleadings, we determine whether the claimant has pleaded facts that affirmatively

–4–

demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). When the plea appropriately challenges jurisdictional facts, we consider evidence submitted by the parties. *Bland*, 34 S.W.3d at 555. In performing our review, we do not look to the merits of the claimant's case, but consider only the pleadings and the evidence pertinent to the jurisdictional inquiry. *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 802 (Tex. App.— Dallas 2014, no pet.). If the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder. *City of El Paso v. Heinrich,* 284 S.W.3d 366, 378 (Tex. 2009). This standard mirrors our review of summary judgments. *Id.*

In this case, the City challenged the trial court's subject-matter jurisdiction on two grounds. Those grounds are lack of standing and lack of waiver of governmental immunity to suit.

Regarding the City's contention that the Association lacks standing to sue the City, the City challenged the Association's pleadings and the existence of facts necessary to establish standing. The supreme court has stated that the court may consider evidence when necessary to resolve standing issues. *See Bland*, 34 S.W.3d at 554. Therefore, a factual inquiry by the trial court as to standing is appropriate.

Regarding the City's contention that there has been no waiver of governmental immunity to permit the Association to bring a declaratory judgment action against it, in addition to challenging the sufficiency of the pleadings, the City challenges the Association's ability to prove its case as a prerequisite to invoking the waiver of governmental immunity under the Texas Uniform Declaratory Judgments Act ("UDJA"). The City failed to cite any authority to support the requirement that the trial court conduct a factual inquiry into the merits of the

Association's notice argument, and, in fact, the waiver of immunity statute applicable to this case does not require such an inquiry. We will therefore determine whether the Association's pleadings establish a waiver of governmental immunity. No factual inquiry by the trial court is required or warranted.

DISCUSSION

STANDING

In its first issue, the City claims the Association does not have standing to bring claims for declaratory and injunctive relief. Standing is a necessary component of a court's subject matter jurisdiction. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis, rather than common-law rules. *Hunt v. Bass*, 664 S.W.3d 323, 324 (Tex. 1984); *Everitt v. TK-Taito, LLC*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.).

The Association claims standing to bring this suit under the Texas Uniform Unincorporated Association Act, codified in chapter 252 of the Texas Business Organizations Code (the "Code"). The City challenges the Association's status as a nonprofit association claiming it does not have a "nonprofit purpose" recognized by the Code, and thus cannot rely upon the Code for standing. We disagree with the City.

The Code defines a "nonprofit association" as an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose. TEX. BUS. ORGS. CODE ANN. § 252.001(2) (West 2012). A "nonprofit purpose" is in turn defined broadly to include: serving charitable, benevolent, religious, eleemosynary, patriotic, civic, missionary, educational, scientific, social, fraternal, athletic, aesthetic, agricultural, and horticultural purposes; operating or managing a professional,

–6–

commercial, or trade association or labor union; providing animal husbandry; or operating on a nonprofit cooperative basis for the benefit of its members. *Id.* § 2.002.

The pleadings and the relevant documents and testimony presented to the trial court establish the Association's purposes are "advancing the interest of East Village Residents, specifically including but not limited to advocacy on East Village land use and zoning issues for the benefit of East Village Residents" and the betterment of the neighborhood. Protecting the quality of neighborhood living is a civic purpose. *See, e.g., Hill Country Estates Homeowners Ass'n v. Guernsey*, No. 13–13–00395–CV, 2015 WL 2160510, at *2 (Tex. App.—Corpus Christi May 7, 2015, no pet.) (mem. op.); *Anderson v. New Prop. Owners' Ass'n of Newport, Inc.*, 122 S.W.3d 378, 385 (Tex. App.—Texarkana 2003, pet. denied). Therefore, the Association has a nonprofit purpose and is a nonprofit association to which the Code applies.

Next, citing section 252.006 of the Code, entitled "Liability in Tort and Contract," the City contends that the Association does not have standing to seek declaratory and injunctive relief to prevent the City from taking certain actions because the Code provides that an association is a legal entity only for the purposes of determining and enforcing rights, duties, and liabilities in contract and tort—claims that are not involved in this lawsuit. The City's reliance on section 252.006 is misplaced. Section 252.006 protects members of associations from individual liability for actions of the associations that sound in contract or tort. Section 252.006 does not purport to address, much less to confer or restrict, the standing of an association.

Instead, section 252.007 of the Code, entitled "Capacity to Assert Defend; Standing," is the provision that confers standing on associations. An association may assert a claim in its name on behalf of its members if:

(1)     one or more of the nonprofit association's members have standing to assert a claim in their own right;

(2)     the interests the nonprofit association seeks to protect are germane to its purposes; and

(3)     neither the claim asserted nor the relief requested requires the participation of a member.

TEX. BUS. ORGS. CODE ANN. § 252.007(b).

The City does not challenge the Association's ability to satisfy the second and third prongs of the statute's associational standing test. Focusing on the first prong, the City argues the Association does not have standing because it does not own property within 200 feet of East Village. We have previously considered and rejected this argument in *Wyly v. Preservation Dallas*, 165 S.W.3d 460, 463 (Tex. App.—Dallas 2005, no pet.).[3] The Association does not have to own property itself to challenge the notice given. What is required is that one or more of its members own property within the notice area and would have standing to assert a claim.

The Association alleged that one or more of its members reside and own real property within 200 feet of East Village and have particularized injury standing to challenge the validity of the Ordinance. Specifically they claim the value of their property will be suppressed and the development will cause a traffic nuisance. The Association also presented evidence that two of the Association's members have owned real property within 200 feet of East Village for more than forty-five years and that the rezoning will adversely impact them, as well as others, who own property near East Village.

The City argues these jurisdictional facts and pleadings do not satisfy the first prong of the test because one of the two members identified by the Association putatively waived standing by returning a reply form supporting the zoning change without noting an objection to the

---

[3] The City cites *Kinkaid School, Inc. v. McCarthy*, 833 S.W.2d 226 (Tex.App.—Houston [1st Dist.] 1992, no pet.), a case that was decided before the Texas Supreme Court adopted the associational standing test set forth in *Hunt*, and before the Legislature adopted the Uniform Unincorporated Nonprofit Association Act at issue here. In all events, the *Kinkaid* court did not consider or apply any associational standing test.

noticed proposal. Of course, only one member with standing is required.[4] Moreover, the one member who expressed no opposition prior to the City's approval appeared below to make clear that he objected to the plan as approved and to complain that he had not received notice adequate to describe it. Therefore the Association presented evidence that at least one of its members could sue in his own right. This satisfies the first prong of the test.

We overrule the City's first issue.

We now turn to the City's second and third issues concerning waiver of governmental immunity to suit.

### WAIVER OF GOVERNMENTAL IMMUNITY

Sovereign or governmental[5] immunity consists of two distinct components: immunity from suit and immunity from liability. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). While the City does not assert immunity from liability, it does urge that it remains immune to this suit. The City's brief makes two arguments: (1) the UDJA's recognition of a declaratory remedy in Civil Practice and Remedies Code section 37.003 does not generally confer subject-matter jurisdiction on trial courts; and (2) the legislative language in section 37.006 cited by the Association as expressly waiving the City's immunity to suit embraces a requirement that a plaintiff establish the illegality of an ordinance as a pre-condition of jurisdiction below and hence here.

The City is correct in noting that the UDJA does not confer a separate grant of subject-matter jurisdiction on the state's trial courts. Instead, it authorizes courts to issue declaratory

---

[4] While the argument on standing focuses on owners of property within 200 feet of East Village, the Dallas Development Code requires the City to give written notice of the proposed zoning change to owners of property within 500 feet of East Village. We presume the City agrees that it has to comply with its own development code and that owners of property within 500 feet of East Village would have standing to challenge the Ordinance.

[5] In our jurisprudence we employ the phraseology "sovereign immunity" and "governmental immunity" respectively to refer to the immunity applicable to the state itself, in the first instance, and to the various political subdivisions that are created by the Legislature's will and operate independently from the state itself.

relief as a form of remedy, in addition to others, in cases in which the court is otherwise vested with constitutional and statutory subject-matter jurisdiction over the dispute. *City of Dallas v. Albert*, 354 S.W.3d 368, 378 (Tex. 2011); *Texas Lottery Comm'n v. Bank of DeQueen*, 325 S.W.3d 628, 634 (Tex. 2010). Of course, the City does not contend this suit is outside of the broad, constitutional or statutory jurisdiction of the district court below. *See* TEX. CONST. art. V § 8; TEX. GOV'T CODE ANN. §§ 25.007—008 (West ). Rather, it argues that its immunity to suit has not been waived.

The Legislature created the general jurisdiction relevant here in Texas Government Code sections 25.007 and 25.008. This lawsuit is clearly within that jurisdictional grant. The Legislature addressed the issue of whether a city might properly be made a party to such a case separately, albeit in a provision in the same chapter. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.006. The fact that the Legislature chose to codify that section in the same chapter in which it creates the declaratory remedy does not detract from its effect or withdraw the general jurisdiction conferred on the district courts in the Government Code. Instead, the controlling question is whether the Legislature clearly and unambiguously authorized the City to be added to this lawsuit. *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006). It did.

Section 37.006(b) of the UDJA states that "[i]n any proceeding that involves the validity of a municipal ordinance or franchise, the municipality *must be made a party* and is entitled to be heard . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(b). It is difficult to imagine a clearer or plainer expression of intent to render a governmental entity susceptible to suit than one mandating that it be joined. As the supreme court observed in a case involving the City, "[t]he DJA waives a municipality's immunity in a suit that involves the validity of a municipal ordinance . . . ." *Albert*, 354 S.W.3d at 378 (applying *Heinrich*, 284 S.W.3d at 366). As the court observed in *Heinrich*, "[f]or claims challenging the validity of ordinances . . . *the . . . Act*

–10–

*requires that the relevant governmental entities be made parties, and thereby waives immunity.*" 284 S.W.3d at 373 n.6 (emphasis added).

The City spends the majority of its brief urging the Court to examine the merits of its Ordinance and the notice issued in advance of it, claiming the immunity waiver, and hence the district court's jurisdiction, turn upon that inquiry. The City does not rely on the language of the UDJA, cite to, or discuss the supreme court's holdings in *Heinrich* and *Albert*. Instead, it relies on the merits inquiry the *Miranda* court conducted to determine whether governmental immunity had been waived under the Texas Tort Claims Act. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004). The City reads into the immunity waiver of the UDJA a like requirement that a party challenging an ordinance must first establish the ordinance is in fact invalid as a pre-condition of the right to sue and judicial competence to entertain the claim. The City then claims the Association cannot establish the Ordinance is invalid because the notice given was sufficient as a matter of law.

The City's reliance on *Miranda* is misplaced because *Miranda*'s merits inquiry is the product of a statutory regime that makes the jurisdictional waiver co-extensive with liability. Jurisdiction in this case does not depend upon a determination of whether there is a factual dispute about the sufficiency of the notice given because section 37.006(b)'s waiver of immunity does not require such a showing. And even if the City established that the notice given was sufficient as a matter of law, which it has not, such a showing would not affect the waiver of governmental immunity under the UDJA.

As previously stated, *Miranda* concerned a waiver of governmental immunity under the Texas Tort Claims Act, not section 37.006(b) of the UDJA. *See id.* at 224. The Texas Tort Claims Act waives immunity from suit but only "to the extent of liability created by [the Act]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a). The Texas Tort Claims Act expressly

–11–

waives sovereign immunity in three areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Miranda*, 133 S.W.3d at 224. The Texas Tort Claims Act further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute. TEX. CIV. PRAC. & REM. CODE ANN. § 101.058. A governmental unit waives sovereign immunity under the recreational-use statute only if it is grossly negligent. *Id.* § 75.002(c)—(d). Considering the interplay between the Texas Tort Claims Act and the recreational use statute, a governmental unit retains immunity from suit absent evidence of circumstances giving rise to a duty to warn or protect coupled with the requisite mental state. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015). Thus, the immunity waiver under the Texas Tort Claims Act is intertwined with the merits of a claim under that act. *Id.* at *5.

The UDJA does not include a statutory expression, like the expression in the Texas Tort Claims Act, that conditions waiver of governmental immunity on a showing of potential liability. Under the UDJA, governmental immunity is waived if the proceeding involves the validity of a municipal ordinance. Nothing more. Nothing less. For jurisdictional purposes, what is required is a pleading that would support the invalidation of the ordinance. *See, e.g., City of McKinney v. Hank's Rest. Grp., LP*, 412 S.W.3d 102, 113 (Tex. App.—Dallas 2013, no pet.). Here, the Association averred that the Ordinance is void for lack of sufficient notice because the notices did not state the SUP requirement was being waived for "big box" stores.[6] If a notice of a zoning change does not sufficiently apprise its recipients of the nature of the proposed new zoning, the ordinance is void. *See City of Amarillo v. Wagner*, 326 S.W.2d 863, 864 (Tex. Civ. App.—

---

[6] The Association's pleadings in this case are materially different from the pleadings in *State v. Lueck*, 290 S.W.3d 576 (Tex. 2009), on which the City relies for the proposition that simply stating there is a violation of a statute will not invoke waiver of governmental immunity. *Lueck* involved an alleged waiver of immunity under the Texas Whistleblower Act. The plaintiff alleged he had been fired because of his good faith reports of TxDOT's violation of state and federal law. Lueck did not plead any facts to support this conclusion, and, in fact, the email report upon which he relied only warned of regulatory non-compliance, not a violation of law, and was not sent to an appropriate law-enforcement authority. Thus, under these circumstances, the court found Lueck's allegations affirmatively negated the court's subject-matter jurisdiction. The deficiency in *Lueck*'s pleading does not exist in this case.

–12–

Amarillo 1959, writ ref'd n.r.e.). Because lack of sufficient notice is a basis upon which the Ordinance would be void, the Association has pleaded a claim under the UDJA for which the Legislature has authorized suit.

### VALIDITY OF THE NOTICE

Building on its *Miranda* argument, the City urges that *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 510 (Tex. 1993), and *Mickens v. Longhorn DFW Moving, Inc.*, 264 S.W.3d 875, 878 (Tex. App.—Dallas 2008, pet. denied), conclusively establish that compliance with notice requirements is a question of law to be determined by the trial court and then by this Court de novo. As noted above, the UDJA does not invite an inquiry into the adequacy of the notice given. Regardless, the *Dresser* and *Mickens* cases are not on point as they were decided on the merits and at trial, not during an interlocutory appeal, and they concerned the fair notice requirement of conspicuousness for indemnity and release agreements under the Texas Uniform Commercial Code.[7]

Because the Association asserted a claim under the UDJA for which governmental immunity has been waived, we overrule the City's second issue.

### EVIDENTIARY OBJECTIONS

The City separately complains about the trial court's rulings on several evidentiary objections the City made to testimony the Association presented in response to the City's jurisdictional challenge. Regardless of whether the trial court had to address the evidence presented in connection with the plea or the objections thereto, the trial court did not abuse its discretion in overruling the City's objections because they were without merit. *See Carpenter v.*

---

[7] Likewise, the City's reliance on *Midway*, 552 S.W.2d 170 is misplaced. That case involved a post-trial determination of the sufficiency of the notice given, not a determination on interlocutory appeal. To the extent a municipality wishes to pursue a prompt legal resolution of what it perceives as a meritless declaratory challenge to an ordinance, that avenue is open to it in Rule 91a, albeit without the assured right of interlocutory appeal and its consequent delay.

–13–

*Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Lopez v. La Madeleine of Tex., Inc.,* 200 S.W.3d 854, 859—60 (Tex. App.—Dallas 2006, no pet.). We overrule the City's evidentiary ruling complaint.

### INJUNCTIVE RELIEF

In its third issue, the City claims the Association failed to allege and establish the existence of sufficient facts to invoke a waiver of the City's immunity to maintain an action for injunctive relief.

In connection with the Association's request for a permanent injunction, the Association alleged that any further conduct predicated on the validity of the Ordinance would be *ultra vires.* The Association seeks to enjoin the City and its officials, including its Chief Building Official, from issuing a building permit for a general merchandise or food store 100,000 square feet or more on East Village; from issuing a certificate of occupancy for any building that does not comply with the pre-Ordinance zoning on East Village; and from issuing any permits or certificates on East Village for uses that do not comply with the pre-Ordinance zoning. The Association further seeks an order mandating that any such permits already issued be cancelled by the City, and prohibiting the construction and use of any building as a general merchandise or food store 100,000 square feet or more on East Village.

The Texas Supreme Court has clarified the law of governmental immunity from claims for injunctive relief in *Heinrich*. Under that case, governmental entities retain immunity from claims for injunctive relief based on allegations that government officials are violating the law or exceeding their powers under the law. 284 S.W.3d at 372—73. Such claims must be brought against the responsible government actors in their official capacities. *See id* at 369.

The Association seeks injunctive relief for *ultra vires* conduct predicated on a void ordinance. Under *Heinrich*, the City retains its immunity from the Association's claims for

injunctive relief, while City officials, in their official capacity, do not.  Therefore, the Association has not pleaded facts that demonstrate a waiver of governmental immunity to assert its injunction claim against the City.  We sustain the City's third issue.

## CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction as to the Association's standing and ability to bring a declaratory judgment action challenging the validity of the Ordinance.  We reverse the trial court's order denying the City's plea to the jurisdiction as to the Association's permanent-injunction claim and render judgment dismissing that claim.  We remand the cause for further proceedings consistent with this opinion.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

141406F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-14-01406-CV          V.

EAST VILLAGE ASSOCIATION, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-14-07239.
Opinion delivered by Justice Schenck.
Justices  Lang-Miers and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment as it respects the court's ruling on the City of Dallas' plea to the jurisdiction as to plaintiff's claim for injunctive relief and render judgment for the City of Dallas on that claim. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court .

It is **ORDERED** that appellee EAST VILLAGE ASSOCIATION recover its costs of this appeal from appellant CITY OF DALLAS.

Judgment entered this 7th day of October, 2015.