# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00321-CV

---

**Vista Grande Homeowners Association, Inc., Appellant**

**v.**

**Dennis Brand and Kimberly Harper, Appellees**

---

### FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-003601, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Vista Grande Homeowners Association, Inc. (the Association) appeals from the district court's order dismissing its breach of contract claim against Dennis Brand and Kimberly Harper (collectively, the Owners) for lack of subject matter jurisdiction. We will affirm.

## BACKGROUND

This dispute involves the construction of a home on Lot 63 in Vista Grande Section Two (Section Two), a subdivision in the Hudson Bend community in Travis County. Section Two is composed of four lots—Lot 43, Lot 44, Lot 62, and Lot 63. Section Two is in the center of and surrounded by another subdivision, Vista Grande Section One (Section One). The plat for Section One was filed August 2, 1973, and recorded at Plat Book 64, Page 26 of the Travis County Plat Records. The plat for Section Two was filed October 8, 1973, and recorded at Plat Book 66, Page 87 of the Travis County Plat Records. Section One and Section Two each

have separate declarations imposing restrictive covenants on the lots within each section. The original Section One declaration authorized the creation of a homeowners' association (the Association) and provided for Section One lot owners' mandatory membership in the Association. The original declaration for Section One was signed August 30, 1973, but not recorded until March 2000. Thereafter, the Section One declaration was amended by a majority of the Section One lot owners in January 2003, but the amended declaration that was recorded was signed by only the officers of the homeowners' association rather than by a majority of the then owners of the lots in Section One as required to comply with the provisions of the original declaration. In February 2012, corrective action was taken, and the majority of the Section One lot owners filed a "First Amended and Restated Restrictive Covenants of Vista Grande Subdivision" for Section One (the Section One Amended Declaration).

The original declaration for Section Two (the Section Two Declaration) was signed and recorded on May 10, 1977, and was not subsequently amended. The Section Two Declaration does not provide for any homeowners' association, nor does it impose on Section Two lot owners mandatory membership in any homeowners' association.

The Owners purchased Lot 63 in Section Two (the Property) in November 2019. Desiring to build a home on the Property, the Owners submitted a project approval plan to the Association seeking architectural approval from the Association's Architectural Control Committee (ACC). The ACC denied the application citing concerns that the proposed residence could obstruct an adjoining lot owner's view of the lake. After a failed attempt to secure the ACC's approval by citing certain provisions of the Section One Amended Declaration, the Owners' legal counsel sent the Association a letter stating:

After further review of the applicable plats and restrictive covenants for the Property, we have discovered that neither you, the Architectural Control Committee (the "ACC"), nor the Vista Grande Homeowners Association, Inc. (the "HOA") have any authority over the Property or over our clients. Specifically, the First Amended and Restated Restrictive Covenants of Vista Grande Subdivision, filed as Instrument#2012044311 in the Travis County Clerk's Real Property Records (the "Declaration") encumbers only the original Vista Grande subdivision located at Plat Book 64, Page 26 of the Plat Records of Travis County, Texas. Our clients' Property is located solely within Vista Grande Section Two, located at Plat Book 66, Page 87 of the Plat Records of Travis County, Texas. Nowhere in the Declaration is Plat Book 66, Page 87 referenced, incorporated or otherwise dedicated.

Having expressed their view that the Property was not subject to the Section One building restrictions and that they did not need approval from the Section One ACC, the Owners proceeded to begin construction of a house on the Property in the spring of 2020. On July 9, 2020, the Association sent the Owners copies of recorded instruments executed by the owners of Lot 43, Lot 44, and land constituting .0462 acres out of Lot 62.[1] These documents, which were each titled "Acknowledgement," were executed and recorded in early July 2020. Each of the Acknowledgments recites:

I understand [my lot] to be included in the real property that is described in and subject to the Amended and Restated Covenants of Vista Grande Homeowners Association, filed as Document 200411662 and 2012044311 in the real property records of Travis County, Texas (the "Amended and Restated Covenants") and part of the "Association" because:

(a) [my lot] has always been subject to assessment by the Association;

(b) architectural review is conducted by the Association;

(c) [my lot] is afforded notice and voting rights with regard to Association matters; and

---

[1] This portion of Lot 62, which constitutes approximately 7% of the total square footage of Lot 62, is adjacent to Lot 44 and was conveyed to the owner of Lot 44 by the then-owner of Lot 62.

(d) the "Section Two" property was included in the vote on the Amended Declaration (as evidenced by the Lot 44 acknowledgement document included in Doc. No. 2012044311).

[My lot] is also subject to the Section Two covenants found at Volume 5774, Pages 2216-2219 in the real property records of Travis County, Texas (the "Section Two Covenants"). The Section Two Covenants state that "at any time the then record owners of a majority of the lots shall have the power through a duly recorded written instrument to change the membership of the [ACC]" and further provides the covenant can be changed by "an instrument signed by the majority of the then owners of the lots has been recorded, agreeing to change the covenants in whole or in part." Whether or not the Section Two Covenants were supplemented/amended by the Amended and Restated Covenants, I hereby consent to, ratify, and approve, the adoption of the Amended and Restated Covenants as a supplement to the Section Two Covenants, to include any change to the ACC to have the ACC for the Vista Grande Homeowners Association serve as the ACC under the Section Two Covenants. The covenants of Section Two that contain limitations and restrictions on development and construction that are more stringent than those in the Amended and Restated Covenants shall continue to apply to all Section Two property and property subject to the Section Two Covenants, including the garage restriction in Section B-1.

The Association asserted that these Acknowledgements demonstrated that the Property, even though located in Section Two, was subject to the Section One Amended Declaration because lots in Section Two had paid assessments levied by the Association and had participated in votes regarding Association matters. The Association also claimed that the Acknowledgements constituted an agreement by the majority of the Section Two lot owners to (1) amend the Section Two Declaration by supplementing it with the Section One Amended Declaration and (2) provide that the Section One ACC would serve as the architectural control committee for Section Two.

On July 14, 2020, the Association filed suit against the Owners asserting a cause of action for breach of contract alleging that the Owners breached restrictive covenants burdening the Property by failing to secure architectural approval from the Association for their construction on the Property. The Association alleged that the Property was subject to the

4

Section One Amended Declaration and that it was authorized to enforce the restrictions contained therein. The Association sought the court's confirmation that the Owners had breached the Section One Amended Declaration and injunctive relief requiring the Owners to bring their construction into compliance with the Section One Amended Declaration.

The Owners filed a general and verified denial asserting that the Owners were not party to any contract with the Association. The Owners also filed a counterclaim for declaratory relief that the Association had no authority over them or the Property and could not enforce any provision of the Section One Amended Declaration against them.

The Association then filed a motion for partial summary judgment arguing that, as a matter of law, the Property was subject to the Section One Amended Declaration. In addition, the Association argued that a majority of the Section Two lot owners had executed and recorded acknowledgement instruments to confirm that the Section Two lots "have always been included in the Subdivision" and that the Section One Amended Declaration applies to those lots as well as to the lots in Section One. The Association sought summary judgment that the Property was part of Section One, that the Owners were required to obtain architectural review and approval from the Association, and that no such approval had been granted. In response, the Owners asserted that the Property was not part of Section One, that the relevant plats and declarations of restrictive covenants establish that the Association's authority extends only to those lots that are in Section One, and that the Association had no standing to bring a breach of contract claim against the Owners. With respect to the allegation that a majority of the Section Two lot owners had filed acknowledgements that purported to bring Section Two within the scope of the Association's authority, the Owners asserted that only fifty percent of the Section Two lot owners had filed acknowledgements, not a majority of them, which was not sufficient to make

5

any changes to the declarations governing Section Two. After considering the Association's motion and the evidence submitted by the parties, which included the relevant plats, declarations, and other filings in the Travis County property records, the district court denied the Association's motion for summary judgment.

Thereafter, the Association filed a second motion for partial summary judgment in which it argued that, even if the Owners were correct that the Property was separately platted and part of Section Two rather than part of Section One, a majority of the Section Two lot owners had "opted into the [Section One] governance scheme" by filing the Acknowledgements, which the Association asserted had amended the Section Two Declaration. The Association again sought summary judgment that the Property was subject to the architectural review and approval requirements of the Section One Amended Declaration. The Owners filed motions for summary judgment on both the Association's breach of contract claim and their counterclaims for declaratory relief. The Owners re-urged their arguments that the Property was not subject to the Association's authority and that, as a matter of law, the Association had no standing to bring a breach of contract claim against them. The Owners requested that the court render judgment in their favor on the Association's claims against them. The Owners also requested that the court grant summary judgment in their favor on their counterclaims against the Association seeking declarations that the Association had no authority over the Property or the Owners and that the Association could not enforce the Section One restrictive covenants against them. After considering the motions and summary judgment evidence, the court found that the Property was

6

"subject to the Vista Grande, Section Two Architectural Control Committee."[2] The court denied all other relief requested in the summary judgment motions.

The Owners then filed a plea to the jurisdiction arguing that the Association did not have standing to enforce Section One restrictive covenants against owners of lots in Section Two. The Owners submitted evidence of the separate plats and restrictive covenants for Section One and Section Two and argued that because the lots in Section Two, including the Property, were not governed by the Section One Amended Declarations, the Association had no standing to bring a breach of contract claim against the Owners, who were not subject to the Association's authority. The Association countered that certain events and documents confirmed that the Property was "part of the Association," and that, in any event, the Section Two lot owners had "ceded architectural review authority to the Association" because of the "majority of the then owners of the lots" in Section Two having filed the Acknowledgements. After a hearing, the district court granted the Owners' plea to the jurisdiction and dismissed the Association's claims without prejudice. After the district court filed its findings of fact and conclusions of law, the Association perfected this appeal.

**STANDARD OF REVIEW**

The trial court's subject matter jurisdiction may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law we review de novo. *Miranda*, 133 S.W.3d at 226.

---

[2] The court also found that there was a fact issue as to the current membership of the Section Two ACC, which, according to the Section Two Declaration, was originally composed of "Don Cavness and Joe McMordie and a third member to be agreed upon by both parties."

7

The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* We begin with the allegations in the plaintiff's live pleadings, which we construe liberally in favor of jurisdiction and, unless challenged with evidence, take as true. *See id.* at 226-27. We consider any evidence introduced by the plaintiff relevant to the jurisdictional inquiry. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Blue*, 34 S.W.3d at 555 ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts that do not implicate the merits and those facts are disputed, the court must make the necessary fact findings to resolve the jurisdictional issue. *See Miranda*, 133 S.W.3d at 226 ("Whether a district court has subject matter jurisdiction is a question for the court, not the jury, to decide, even if the determination requires making factual findings, unless the jurisdictional inquiry is inextricably bound to the merits of the case."). On appeal, any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency. *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806-07 (Tex. App.—Austin 2009, no pet.).

A plaintiff has standing to sue when the pleaded facts state a "concrete and particularized, actual or imminent, and not hypothetical" injury. *Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008)). Standing is a "prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Blue*, 34 S.W.3d at 553-54. The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Id.* When a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf

of its members, an evidentiary inquiry sufficient to determine standing does not involve a significant inquiry into the substance of the claims. *Id.* "[A] determination of associational standing is a prerequisite to the plaintiff's presentation of its substantive claims." *Id.* The Texas Property Code provides that "a property owners' association . . . may initiate, defend, or intervene . . . in litigation affecting the enforcement of a restrictive covenant . . . ." Tex. Prop. Code § 202.004(b). The Association's standing is not conditioned on whether the claim it asserted against the Owners is ultimately valid but "merely requires that the parties to the suit be subject to the covenant." *Teal Trading & Dev., L.P. v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020). Thus, the Association's standing to bring suit for breach of the Section One Amended Declaration depends on whether the Property is subject to the Section One Amended Declaration.

## DISCUSSION

The district court found that the Property is in Section Two, that Section Two's deed restrictions are separate from those that burden the lots in Section One, and that the Property was not encumbered by the Section One Amended Declaration. Thus, the district court concluded that the Association did not have standing to assert a claim against the Owners for breach of contract for allegedly violating Section One's architectural review process in developing the Property. In its first issue, the Association asserts that the trial court erred in dismissing its claims against the Owners for lack of standing. In its brief, the Association argues that the trial court erred in finding that the Property is not subject to the Section One Amended Declaration. Specifically, the Association states that the Acknowledgements, which it claims were executed and recorded by a majority of the Section Two lot owners, "provide that the

9

property depicted in the Section Two plat is subject to the architectural review of the Association and supplement the Section Two Declaration with the language from the [Section One] Amended Declaration." We understand the Association to argue that the Acknowledgements operate to amend the Section Two restrictive covenants to bring those lots within the purview of the Association and its architectural review process, thereby conferring on the Association standing to enforce the Section One restrictive covenants with respect to the lots in Section Two.

We first consider whether the Acknowledgments were, in fact, executed and recorded by a majority of the Section Two lot owners as required to effect any changes to the restrictive covenants burdening the Section Two lots. The record includes three acknowledgements filed by (1) the owner of Lot 43; (2) the owner of Lot 44; and (3) Don Braeuer, an individual who purported to be the owner of Lot 62 by virtue of having been conveyed .0462 acres out of Lot 62 by that lot's previous owner. The conveyance of a portion of Lot 62 to Braeuer alone, however, did not operate either to create a new lot in the platted Section Two or to make Braeuer the owner of Lot 62. Any revisions or amendments to a plat must be approved, filed, and recorded. *See* Tex. Loc. Gov't Code §§ 232.009 (revising plats); .011 (amending plats). The record contains no evidence that the Section Two plat was revised or amended to address the conveyance of a small portion of Lot 62 to Braeuer. The evidence in the record establishes that Lot 62—except for the previously conveyed .0462 acres—was conveyed to and is currently owned by the Owners, not Braeuer. Thus, only the owners of two of the four lots in Section Two—Lot 43 and Lot 44—agreed to have their lots bound by the Section One Amended Declaration and subject to the architectural review process applicable to Section One lots. Because this does not constitute the majority of owners of lots required to amend the Section Two restrictive covenants, the Acknowledgments did not operate to effectuate the

10

changes the Association relies on to support its power to enforce the Section One Amended Declarations against the Property or the Owners.

On appeal, the Association asserts that certain provisions in the Texas Business Organizations Code govern how to determine whether the votes of the owners of Lot 42, Lot 43, and Braeuer constitute the required majority of owners of lots in Section Two. First, the Association claims that owners of property in the Section Two plat constitute an "association" as that term is defined in the Texas Business Organizations Code. Specifically, the Association relies on section 252.001(2), which defines "nonprofit association" as "an unincorporated organization . . . consisting of three or more members joined by mutual consent for a common, nonprofit purpose." *See* Tex. Bus. Orgs. Code § 252.001(a). The code defines a "nonprofit purpose" to include serving "civic purposes." *See id.* § 2.002(1). Relying on *City of Dallas v. East Village Association*, the Association asserts that "protecting the quality of neighborhood living is a civic purpose." 480 S.W.3d 37, 43 (Tex. App.—Dallas 2015, pet. denied). The Association also points to Texas Property Code section 209.002 to support its contention that the owners of property on the Section Two plat constitute an "association." *See* Tex. Prop. Code § 209.002 (providing that "property owners association" constitutes unincorporated association). The Association then argues that "[b]ecause the members constitute an association, the actions of the majority of the owners on the Section Two Plat are binding on all of the property, including the Owners, as long as the actions are not illegal, against some public policy, or fraudulent." *See Episcopal Church v. Salazar*, 547 S.W.3d 353, 421 (Tex. App.—Fort Worth 2018), *aff'd in part, rev'd in part sub nom Episcopal Diocese of Fort Worth v. Episcopal Church*, 602 S.W.3d 417 (Tex. 2020).

Assuming, without deciding, that the Association's assertions are correct, it must still have been the case that a majority of the owners of lots in Section Two voted to subject the lots in Section Two to the Section One Amended Declaration. In support of its position that Braeuer's vote along with those of the owners of Lot 43 and Lot 44 constituted a majority of votes, the Association relies on another section of the Texas Business Organization Code that it claims "applies for voting by the members." *See* Tex. Bus. Orgs. Code § 6.157. Section 6.157 addresses the voting procedure for a jointly held ownership interest, which it contends is the case with Lot 62. The Association argues that, by virtue of section 6.157, it is irrelevant that Lot 62 is owned by someone other than Braeuer; that because he owns.0462 acres out of that lot, his vote counts; and that "[b]ecause there are 4 lots, the 2 votes in favor (50%), plus Mr. Braeuer's proportionate vote for lot 62, is sufficient to meet the simple majority threshold." This argument fails because the Texas Business Organizations Code itself provides that the only code provisions that apply to or govern chapter 252 "nonprofit associations" are the provisions of chapter 252. *Id.* § 252.017. The voting procedure the Association relies on, which is found in chapter 6 of the code, does not apply to a "nonprofit association."

Alternatively, the Association argues that it has standing to sue the Owners to enforce restrictive covenants because the Section Two lot owners who executed and filed the Acknowledgements thereby designated the Association as their representative to initiate litigation to enforce restrictive covenants. *See* Tex. Prop. Code § 202.004(b) (providing that representative designated by owner of real property may initiate, defend, or intervene in litigation affecting enforcement of restrictive covenant). The Association asserts that, by executing the Acknowledgments, the Section Two property owners "designate[d] the Association to govern the property subject to the Section Two plat." As an initial matter, the

Association's brief does not identify what language in the Acknowledgements purportedly designates it as a "designated representative" of Section Two lot owners or for what purpose the designation was made. And we find no such language in the text of the Acknowledgements themselves. Moreover, the Association does not explain, nor can we discern, how the Association, even if a designated representative of the Section Two lot owners, could enforce restrictive covenants against the Owners that do not apply to the Property. The Association's reliance on the Acknowledgements to demonstrate their standing to bring this suit against the Owners is misplaced. We overrule the Association's first appellate issue.

In its second issue, the Association asserts that the trial court erred when on cross-motions for summary judgment and before ruling on the Owners' plea to the jurisdiction, it made a finding that the Property "is subject to the Vista Grande, Section Two Architectural Control Committee." The Association argues that (1) the Owners' pleadings did not request this finding and, therefore, the relief was not supported by the pleadings; (2) the court had no basis to grant what the Association characterizes as declaratory relief; and (3) the Owners' summary judgment evidence did not conclusively establish that the Acknowledgements did not amend the Section Two Declaration and cause the Property to be subject to the Section One Amended Declaration. Even assuming the trial court's summary judgment order was erroneous, however, the Association has not explained how it constitutes reversible error. *See* Tex. R. App. P. 44.1 (no judgment may be reversed on appeal on ground that trial court made error of law unless appellate court concludes that error complained of probably caused rendition of improper judgment). After considering the Owners' plea to the jurisdiction, the trial court correctly found that the Association lacked standing to bring a claim against the Owners and dismissed the suit for lack of subject-matter jurisdiction. The Owners thereafter non-suited their counterclaims against the

13

Association. Having ultimately determined that it did not have subject-matter jurisdiction to adjudicate the Association's claims, any error by the trial court in its previous summary-judgment order was harmless and does not constitute reversible error. We overrule the Association's second appellate issue.

## CONCLUSION

Having overruled the Association's two appellate issues, we affirm the trial court's judgment.

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Affirmed

Filed: November 22, 2023

14