**TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN**

---

**NO.  03-19-00002-CV**

---

**Max Grossman, Appellant**

**v.**

**Mark Wolfe, Executive Director, Texas Historical Commission, Appellee**

---

**FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-18-006433, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

**O P I N I O N**

Appellant Max Grossman, a resident of El Paso, sued Wolfe—in his capacity as Executive Director of the Texas Historical Commission—for declaratory and injunctive relief related to the allegedly unlawful issuance of an archeological permit for an area of downtown El Paso designated as the site for a proposed construction project.  Grossman appeals from the district court's order sustaining appellee Mark Wolfe's plea to the jurisdiction.  We will affirm.

**Background**

In November 2012, El Paso voters approved a proposition authorizing the City of El Paso to issue bonds for various "quality of life" projects, including the construction of a

"multipurpose performing arts and entertainment facility."[1] The City has decided to build this facility in a mixed-use area of downtown El Paso known as the Duranguito or the Union Plaza district, and it has purchased the property needed for the project. The plans for the project require demolition of existing buildings located within the footprint of the proposed facility.

In May 2018, the City notified the Texas Historical Commission about its construction project, as required by the Texas Antiquities Code. *See* Tex. Nat. Res. Code § 191.0525(a) (requiring responsible party to notify Commission "[b]efore breaking ground at a project location on state or local public land").[2] The Commission instructed the City to submit a permit application and research design under Commission Rule 26.13, and the City complied. *See* 13 Tex. Admin. Code § 26.13 (Texas Historical Comm'n, Application for Archeological Permits).[3] In its permit application, the City proposed that it be allowed to demolish the existing buildings at the project site so that it could investigate the project site using ground-penetrating radar. The Commission granted the City's permit.

Grossman filed the underlying suit against Wolfe, in his capacity as executive director of the Commission, seeking declaratory and injunctive relief in connection with the issuance of the archeological permit. Grossman alleged that Wolfe acted ultra vires in issuing

---

[1] We previously addressed the validity of these bonds and other related issues, including Grossman's claim that the City's construction plans violated the Texas Antiquities Code, in *Ex parte City of El Paso*, 563 S.W.3d 517 (Tex. App.—Austin 2018, pet. filed).

[2] According to Grossman, the City began demolishing buildings in the Duranguito before it notified the Commission. Grossman sued the City in a separate lawsuit for this failure. *See id.* at 521–22, 526 (holding that trial court erred by not enjoining Grossman's suit because the suit fell within the ambit of the bond-validation statute). Grossman and the City settled the matter and the City then notified the Commission as required.

[3] All citations to Title 13 of the Texas Administrative Code are to the current version of rules promulgated by the Commission.

the permit because (1) the Commission had not approved it or issued the permit as required by Commission rules, *see id*. § 26.14(a)(1) (Issuance and Restrictions of Archeological Permits) (specifying requirements for permit applications); and (2) the permit unlawfully allows the City to "commence" its construction project—specifically, demolish the existing buildings—before completion of an archeological survey, *see* Tex. Nat. Res. Code § 191.0525(c) ("If the committee determines that an archeological survey is necessary at the project location, the project may not commence until the archeological survey is completed."). As relief, Grossman asked the district court to declare the permit void and to enjoin the City from conducting the archeological survey authorized by the permit.

Regarding jurisdiction, Grossman asserted in his pleadings that the district court had jurisdiction over his suit under the Uniform Declaratory Judgments Act, Chapter 442 of the Texas Government Code, and Chapter 191 of the Texas Natural Resources Code. *See* Tex. Civ. Prac. & Rem. Code § 37.004 ("A person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."); Tex. Gov't Code § 442.012(a) ("[A]ny resident of this state may file suit in district court to restrain and enjoin a violation or threatened violation of this chapter or Chapter 191, Natural Resources Code, . . . for . . . injunctive relief . . . ."); Tex. Nat. Res. Code § 191.173(a) ("A citizen of the State of Texas may bring an action . . . for restraining orders and injunctive relief to restrain and enjoin violations or threatened violations of this chapter . . . ."); s*ee also* Tex. Gov't Code §§ 442.001–.207 (titled "Texas Historical Commission"); Tex. Nat. Res. Code §§ 191.001–.174 (Antiquities Code). Grossman argued that sovereign immunity was not a bar to jurisdiction because he was suing Wolfe in his official capacity for allegedly ultra vires acts.

3

The City intervened in Grossman's suit against Wolfe, asserting a general denial and arguing that sovereign immunity barred Grossman's claims against Wolfe. In a plea to the jurisdiction, Wolfe challenged Grossman's standing to sue and argued that sovereign immunity barred Grossman's claims because neither the Government Code nor the Antiquities Code contains a waiver of immunity. Ultimately, the district court sustained Wolfe's plea to the jurisdiction and dismissed Grossman's case. Grossman perfected this appeal.

**Standard of Review**

Procedurally, the assertion of sovereign immunity or lack of standing implicates the trial court's jurisdiction and may therefore be asserted in a plea to the jurisdiction. *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012). Parties may submit evidence at the plea-to-the-jurisdiction stage, and the trial court's review generally mirrors the summary-judgment standard. *Sampson v. University of Tex.*, 500 S.W.3d 380, 384 (Tex. 2018). "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004); *see also Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015). The jurisdictional inquiry may unavoidably implicate the underlying substantive merits of the case when, as often happens in ultra vires claims, the jurisdictional inquiry and the merits inquiry are intertwined. *Miranda*, 133 S.W.3d at 228. The

trial court's ruling on a plea to the jurisdiction is reviewed de novo on appeal. *Klumb*, 458 S.W.3d at 8.

To the extent our analysis here includes questions of statutory construction, we review these questions de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011).

## Discussion

To invoke the subject-matter jurisdiction of the district court over his claims challenging government action, Grossman must have standing to bring his claims, and he must overcome the sovereign immunity that generally bars such claims. *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.) (noting that party challenging government action must overcome or avoid fundamental limitations on subject-matter jurisdiction of standing and sovereign immunity). On appeal, Grossman asserts that the district court erred in concluding that it lacked subject-matter jurisdiction because (1) sovereign immunity does not bar his ultra vires claims against Wolfe; (2) the Antiquities Code waives sovereign immunity for claims that a government body or government official has violated or threatens to violate the Antiquities Code; (3) the Antiquities Code confers standing to sue on Grossman because he is a citizen of the State and he has alleged that Wolfe violated the Antiquities Code; and (4) our decision in *Ex Parte City of El Paso*, 563 S.W.3d 517 (Tex. App.—Austin 2018, pet. filed), does not bar Grossman's suit against Wolfe.

### Standing

In his third issue, Grossman asserts that he has standing to bring his suit under section 191.173 of the Antiquities Code. Tex. Nat. Res. Code § 191.173(a). We agree.

5

As a general rule, an individual does not have a right to bring suit—i.e., does not have standing—to contest government decision-making because "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555–56 (Tex. 2000) (quoting *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944)).  To have standing to assert a public right or to challenge government action, as Grossman seeks to do here, an individual must show that he has suffered a particularized injury distinct from that suffered by the general public.  *Id.* at 556–57.

The Texas Supreme Court, however, has long recognized an exception to this general rule:  "Within constitutional grounds, the Legislature may grant a right to a citizen or to a taxpayer to bring an action against a public body or a right of review on behalf of the public without proof of particular or pecuniary damage peculiar to the person bringing the suit."  *Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (citing *Spence v. Fenchler*, 180 S.W. 597, 609 (Tex. 1915)).  In recognizing this exception in *Spence*, the supreme court held that the plaintiff there did not have to show a particular interest or damage to establish standing because the statute at issue authorized "any citizen" to bring an action to enjoin the operation of a "bawdy or disorderly house."  *See Spence*, 180 S.W. at 609.  Later, the supreme court relied on *Spence* to hold in *Scott* that a taxpayer who had no injury distinct from that of the general public nevertheless had standing to sue a governmental entity because the relevant statute provided that "any taxpayer" could challenge in court the legality of the governmental entity's decision.  *See Scott*, 405 S.W. 2d at 56–57; *see also Davis v. Zoning Bd. of Adjustment*, 865 S.W.2d 941, 942 (Tex. 1993) (relying on *Scott* to hold that plaintiffs were entitled to sue zoning board).  And the supreme court has since recognized in dicta *Scott*'s holding regarding the Legislature's authority

6

to grant standing. *See, e.g.*, *Jefferson County v. Jefferson Cty. Constables Ass'n*, 546 S.W.3d 661, 666 (Tex. 2018) (noting general rule that unless standing is conferred by statute, plaintiff must demonstrate an interest in conflict distinct from that of general public); *Andrade v. Venable*, 372 S.W.3d 134, 137 (Tex. 2012) (addressing applicability of judicially created exception to standing for certain taxpayers, but recognizing that standing can be conferred by statute); *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001) (same); *Bland*, 34 S.W.3d at 556 & n. 52 ("Unless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right.") (citing *Scott*, 405 S.W.2d at 55); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984) (holding that plaintiff had shown particular personal interest different from general public that is required by general standing rule, but relying on *Scott*, 405 S.W.2d at 55, to note that "general rule of standing is applied in all cases absent statutory exception to the contrary"); *see also Sneed v. Webre*, 465 S.W.3d 169, 181 (Tex. 2015) ("Generally unless standing is conferred by statute, a plaintiff must demonstrate that he or she possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury.") (cleaned up); *Texas Assoc'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 472 (Tex. 1993) (Doggett, J., dissenting) (citing *Scott*, 405 S.W.2d at 56, for the proposition that "On several occasions, we have recognized the power of the Legislature to exempt litigants from proof of 'special injury.'").

Relevant here and relied upon by Grossman, the Legislature has included in the Antiquities Code a standing provision that is similar to the standing statutes upheld in both *Scott* and *Spence*: "A citizen of the State of Texas may bring an action . . . for restraining orders and

7

injunctive relief to restrain and enjoin violations or threatened violations of" the Antiquities

Code. Tex. Nat. Res. Code § 191.173(a); *see Scott*, 405 S.W.2d. at 56 (quoting relevant statute);

*Spence*, 180 S.W. at 602 (same). And there is no dispute that Grossman is a citizen.

Accordingly, we hold that, based on *Scott* and *Spence*, Grossman has standing under subsection

191.173(a) of the Antiquities Code to sue to restrain and enjoin violations of the Antiquities

Code even though he has not suffered a particularized injury distinct from the general public.[4]

---

[4] In 1992, the United States Supreme Court rejected statutorily created standing, holding:

> To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an "individual right" vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to "take Care that the Laws be faithfully executed." It would enable the courts, with the permission of Congress, "to assume a position of authority over the governmental acts of another and co-equal department," and to become "virtually continuing monitors of the wisdom and soundness of Executive action." We have always rejected that vision of our role.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571–78 (1992) (internal citations omitted). The statutory-standing provision rejected by the Supreme Court in *Lujan* provided that "any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency who is alleged to be in violation of any provision of" the Endangered Species Act. *See id*. at 571–72 (quoting 16 U.S.C. § 1540(g)). Thus, under *Lujan*, a citizen raising "only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy," regardless of an express statutory-standing provision. *Id*. at 573–74

The Texas Supreme Court frequently cites to *Lujan* for standing principles and has recognized that *Lujan* "clarified that the 'generalized grievance' bar to standing is constitutional," but it has done so in cases that did not involve statutorily created standing. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011) (holding that voters had standing to bring equal-protection claims against state because they had asserted a legally cognizable injury). And although *Lujan* supports a holding that Grossman lacks standing here, it neither controls nor overrules authority from the Texas Supreme Court on state-law principles of standing. *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008) (noting that Texas law governs standing issues). As noted above, the Texas Supreme Court explicitly held in *Scott* and

Relying on our holding in *Bacon*, Wolfe contends that Grossman lacks standing because the Antiquities Code does not waive sovereign immunity. *See* 411 S.W.3d at 172 (holding that virtually identical statute did not waive Commission's sovereign immunity). But standing and sovereign immunity, while both components of subject-matter jurisdiction, are entirely distinct jurisdictional concepts. *See id.*; *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 744 (Tex. App.—Austin 2014, pet. denied). A plaintiff seeking to challenge governmental action must establish (1) that he has standing to sue—either under a statutory grant of standing or because he has suffered a particularized injury from that governmental action that is distinct from the general public—*and* (2) that sovereign immunity does not bar his challenge—either because the Legislature has waived sovereign immunity or because his claims do not implicate sovereign immunity. *See Bacon*, 411 S.W.3d at 172. Further, although the underlying disputes and legal issues in *Bacon* and this case are similar, *Bacon* did not address a plaintiff's standing to assert an ultra vires claim under the "private attorney general" provision because Bacon sued only the Commission and did not allege any ultra vires acts. *See id.* at 180 (noting that Bacon "has not complained of any [Commission] conduct that would exceed its statutory authority").

Because the Legislature has statutorily conferred standing on Grossman under the Antiquities Code, we sustain Grossman's third issue.

---

*Spence* that the Legislature may create standing, and it has since recognized those holdings in dicta. *See Scott*, 405 S.W.2d at 56–57; *Spence*, 180 S.W. at 609; *see also, e.g.*, *Venable*, 372 S.W.3d at 137 (recognizing statutorily created standing). We therefore must follow these controlling precedents until the Texas Supreme Court has spoken otherwise. *See Attorney General v. Farmers Exchange*, 411 S.W.3d 139, 147 (Tex. App.—Austin 2013, no pet.) (noting that intermediate appellate courts must follow the instruction of the Texas Supreme Court on state-law issues).

**Sovereign immunity**

Sovereign immunity protects the State of Texas and its agencies from suit and liability. *See, e.g.*, *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620–21 (Tex. 2011) (per curiam). The Legislature may waive immunity by statute. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853–54 (Tex. 2002). If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language. Tex. Gov't Code § 311.034; *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

Even if a governmental entity's immunity has not been waived by the Legislature, a claim may proceed against a government officer in his official capacity if the plaintiff successfully alleges that the official is engaging in ultra vires conduct. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Such claims are commonly known as ultra vires claims. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633 (Tex. 2010). To fall within the ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Heinrich*, 284 S.W.3d at 372. An official acts without legal authority when he "exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt*, 487 S.W.3d at 158. Sovereign immunity "protects exercises of discretion, but when an officer acts beyond his granted discretion—in other words, when he acts without legal authority—his acts are not protected." *Id*. at 163. He acts without legal authority—"beyond his granted discretion"—if he exercises judgment or limited discretion "without reference to or in conflict with the constraints of the law authorizing the official to act," because "a public officer has no discretion or authority to misinterpret the law." *Id*. (quoting *In*

10

*re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding)).  Hence, sovereign immunity "only extends to those government officers who are acting consistently with the law."  *Id*. at 164.

On appeal, Grossman contends that sovereign immunity does not bar his claims because the claims constitute valid ultra vires claims against Wolfe.  *See Heinrich*, 284 S.W.3d at 372 (holding that sovereign immunity does not bar valid ultra vires claims).  We disagree.

Grossman's pleadings allege that Wolfe acted without authority or illegally in granting the permit to the City because Commission staff, rather than the Commission itself, approved the permit.  *See* Tex. Nat. Res. Code § 191.054(a) ("[The Commission] may issue a permit to . . . ."); 13 Tex. Admin. Code § 26.14(a)(1) ("The Commission shall review the permit application . . . and may issue the permit . . . .").  Specifically, Grossman relies on evidence that the fifteen members of the Commission did not consider and approve the permit at issue here, but instead it was considered and approved only by Commission staff, including Wolfe and the state archeologist who signed the permit.  According to Grossman, Commission staff members have no authority to issue permits without the approval of the Commission.

But the permit on its face belies Grossman's argument: "This permit is issued by the Texas Historical Commission . . . by and through its duly authorized and empowered representatives . . . .  The Commission, under authority of the Texas Natural Resources Code, . . . grants this permit for . . . . [an] Intensive Survey" in downtown El Paso.  Further, Wolfe and the state archeologist signed the permit as the "duly authorized and empowered representatives" of the Commission.  In other words, the Commission, which plainly has the authority to issue these type permits, has authorized its executive director and the state archeologist to issue the permit.  We also note that the Government Code specifically delegates to the state archeologist the authority to act on the Commission's behalf with regard to the state archeological program:

11

"The Commission, through the state archeologist, shall direct the state archeological program." Tex. Gov't Code § 442.007(a). And the state archeologist's duties under that provision include "conducting surveys and excavations" and "preserving the archeological or historic interest." *Id.* § 442.007(e). Accordingly, on the record presented in this interlocutory appeal, Grossman has not adequately alleged that Wolfe exceeded his statutory authority by granting a permit without the Commission's approval. As a result, sovereign immunity bars this ultra vires claim.

Grossman also pleads that Wolfe acted without authority or illegally in granting a permit that improperly allows the City to "commence" its construction project—specifically, that it illegally allows the City to begin demolishing the buildings where the project will be built—before "the archeological survey is completed." Tex. Nat. Res. Code § 191.0525(c) ("If the committee determines that an archeological survey is necessary at the project location, the project may not commence until the archeological survey is completed."). This is not a viable ultra vires claim.

The Antiquities Code's purpose is to "locate, protect, and preserve all sites, objects, buildings, . . . and locations of historical, archeological, educational, or scientific interest." *Id.* § 191.002 (declaration of public policy). One way in which it does so is to require that "Before breaking ground at a project location on state or local public land," a political subdivision, like the City of El Paso, must notify the Commission about the project. *Id.* § 191.0525(a). The Commission must then determine whether: (1) a historically significant archeological site is likely to be present at the project location; (2) additional action, if any, is needed to protect the site; and (3) an archeological survey is necessary." *Id.* If the Commission determines "that an archeological survey is necessary at the project location," the Antiquities

12

Code provides that "the project may not commence until the archeological survey is completed." *Id.* §191.0525(b).

Here, the City, in a letter from its archeological consulting company, notified the Commission about the proposed project:

> The scale of the proposed center exceeds the ground disturbance threshold requiring [Commission] notification as stipulated by the regulations of the Texas Antiquities Code. This letter constitutes formal notification for the proposed project from the City of El Paso to the Archeology Division of the Texas Historical Commission.

*See id.* § 191.0525(a), (d) (requiring pre-groundbreaking notice to Commission for, relevant here, projects that disturb more than 5,000 cubic yards). In that same letter, the City asked the Commission to "specify the City's obligations for cultural resource investigations under the terms of the Antiquities Code." The letter also stated that the City planned to conduct a "subsurface" archeological examination given the "demonstrated potential for historic and even prehistoric cultural resources within the [project] tract wherever prior deep impacts have not already disturbed or destroyed them."

The Commission responded to the City's request for "specification of [its] obligations for cultural resource investigations." The Commission stated that the City's project was subject to the Antiquities Code and, after emphasizing the potential for archeological materials in locations "where prior deep impacts have not already" destroyed the materials, the Commission directed the City to apply for an archeological permit under Commission rule 26.13. *See* 13 Tex. Admin. Code § 26.13 (Application for Archeological Permits).

The City filed an application for an archeological permit that included a scope of work for the project, research design, and maps. The proposed scope of work contemplated, as

13

the first phase of the archeological survey, demolition of the existing buildings on the project site to allow for investigation using ground-penetrating radar (GPR): "As buildings currently extant within the project area are demolished down to the current ground surface, the footprints of these spaces, too, will be surveyed by GPR until 100% of the [project] footprint has been examined." Ultimately, the Commission granted a permit that allows the City, as outlined in the scope of work, to demolish the existing buildings on the site as part of the archeological survey. Grossman asserts that this permit violates the Antiquities Code—and, thus, Wolfe acted ultra vires in granting it—because the demolition of existing buildings on a project site constitutes commencement of the project before an archeological survey is completed. *See id.* (stating "the project may not commence until the archeological survey is completed"). We disagree.

The Antiquities Code directs the Commission to determine whether an "archeological survey" is necessary, but it does not establish any parameters for the Commission to use in making the determination. The only statutory constraint related to this determination is the requirement that certain archeological permits be in the best interest of the State. *See* Tex. Nat. Res. Code § 191.054(a). And the Commission's rules contemplate that archeological surveys "can be performed in many ways." 13 Tex. Admin. Code § 26.15(6) (Archeological Permit Categories); *see also id.* § 26.3 (defining "archeological survey standards for Texas" with reference to the standards established by the Commission in consultation with the Council of Texas Archeologists and by federal authorities). In sum, the Antiquities Code and Commission rules appear to give the Commission broad discretion regarding archeological surveys and permits.

Here, the City's letter indicates that the only archeological materials likely to be located at the site will be in the ground under the existing buildings. There is no indication that

14

the buildings have historical or archeological value. More importantly, the Commission's response to the City's notification acknowledges that any archeological materials at the site will be found below ground. In other words, based on the City's notification and the Commission's response, the Commission determined that an archeological survey was necessary, but more specifically that a subsurface archeological survey was necessary. And the record before us indicates that demolition of existing buildings is required to perform a subsurface survey, and that is what the permit at issue here allows. As such, Wolfe did not act ultra vires in issuing the permit. *See Houston Belt*, 487 S.W.3d at 158 (noting that official acts without legal authority when he "exceeds the bounds of his granted authority or if his acts conflict with the law itself").

On the record presented in this interlocutory appeal, Grossman has not adequately alleged that Wolfe exceeded his statutory authority. As a result, sovereign immunity bars Grossman's ultra vires claim against Wolfe and, accordingly, the district court did not err in granting Wolfe's plea to the jurisdiction on this claim.

We overrule Grossman's first issue.

**Grossman's claims seeking to enforce the Antiquities Code—i.e., the non ultra vires claims**

Although Grossman declares in his briefs to this Court that he asserts only ultra vires claims against Wolfe—which is consistent with his naming only Wolfe in his official capacity and not the Commission, *see, e.g.*, *Bacon*, 411 S.W.3d at 176 (ultra vires requires naming agency officer in official capacity as defendant)—his second issue, offered in the alternative to his first, suggests that he has or could assert a general challenge to the Commission's decision to issue the permit. Specifically, Grossman argues in his second issue that even if this Court determines that he has not asserted valid ultra vires claims against Wolfe,

15

Grossman's claims are still not barred by sovereign immunity because section 191.173 of the Antiquities Code waives sovereign immunity for claims seeking to enforce the provisions of the Antiquities Code. Because Grossman did not name the Commission as a party, we construe this argument as a request to replead these claims against the Commission. *See, e.g.*, *Sefzik*, 355 S.W.3d at 623 ("When this Court upholds a plea to jurisdiction on sovereign immunity grounds, we allow the plaintiff opportunity to replead if the defect can be cured."); *Balquinta*, 429 S.W.3d at 736 n.34 (citing *id.* in noting that any jurisdictional defect flowing from plaintiff's choice to assert claims against the state officer rather than the agency would be readily curable by repleading to name agency). But even assuming Grossman is entitled to replead to assert claims against the Commission, the jurisdictional defect would remain because the Antiquities Code does not waive the Commission's sovereign immunity. *See Bacon*, 411 S.W.3d at 177 (holding that virtually identical statute in Texas Natural Resources Code did not waive the Commission's sovereign immunity).

We overrule Grossman's second issue on appeal.

### *Ex parte City of El Paso*

In his final issue, Grossman argues that our decision in *Ex parte City of El Paso*, 563 S.W.3d 517, does not bar his suit here. Because we have determined that sovereign immunity bars Grossman's claims, we need not address this issue

### Conclusion

We affirm the district court's judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose and Justices Kelly and Smith

Affirmed

Filed:   June 21, 2019

17