**Affirm; Opinion Filed December 28, 2020**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00456-CV

**RETURN LEE TO LEE PARK, WARREN JOHNSON,
and KATHERINE GANN, Appellants**

**V.**

**MIKE RAWLINGS, SCOTT GRIGGS, ADAM MEDRANO, CASEY
THOMAS II, DWAINE CARAWAY, RICKEY CALLAHAN, OMAR
NARVAEZ, KEVIN FELDER, TENNELL ATKINS, MARK CLAYTON,
ADAM MCGOUGH, LEE KLEINMAN, SANDY GREYSON, JENNIFER
GATES, PHILIP KINGSTON, and THE CITY OF DALLAS, Appellees**

**On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-18-05460**

### MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Pedersen, III

In 2017, the Mayor of the City of Dallas convened a task force to consider what actions, if any, should be taken regarding City-owned symbols of the Confederacy. This appeal involves two of those symbols—a statue of Robert E. Lee that was located at the City's Oak Lawn Park (the Lee Statue) and the Confederate Monument that was located at the City's Pioneer Cemetery Park.

On September 1, 2017, the City posted the agenda for a City Council meeting scheduled for September 6, 2017. The agenda notice stated that the City Council would consider a resolution (described in the notice) regarding Confederate symbols on City property. At the September 6th meeting, the City Council passed the resolution concerning Confederate monuments, symbols, and names. The resolution directed the city manager to immediately remove the Lee Statue and store it at a safe location. The resolution also directed the task force to initiate a series of public meetings to consider what to do with the Lee Statue and other Confederate symbols, including the Confederate Monument, once they had been removed. The Lee Statue was removed on September 14, 2017, and placed into storage.

During the months that followed, the City held numerous public hearings, briefings, and meetings discussing what to do with City-owned symbols of the Confederacy. On February 13, 2019, at a publicly noticed meeting, the City Council voted to take all steps necessary to remove the Confederate Monument and to procure a contract for its removal. The Confederate Monument was located in a City-created historical district, so the City applied for and was granted a certificate of removal from the City's Landmark Commission. The City also solicited bids for the removal of the Confederate Monument.

In a publicly noticed meeting on May 22, 2019, the City Council authorized the sale of the Lee Statue. The City retained an auction service, and the statue was sold for $1.4 million dollars. The City Council confirmed the sale on June 12, 2019.

*Litigation Ensues*

On April 24, 2018, Return Lee to Lee Park and Gann filed suit against the Mayor of the City of Dallas and the Dallas City Council members in their individual capacities,[1] objecting to the removal of the Lee Statue and the Confederate Monument and accusing the Mayor and City Council members of violations of the Texas Antiquities Code and criminal mischief. They sought a temporary restraining order, temporary and permanent injunctions, and specific performance—the return of the Lee Statue. They later supplemented their petition to add the City of Dallas as a defendant.[2]

The City filed a plea to the jurisdiction and, in the alternative, an original answer. The City subsequently supplemented its plea to the jurisdiction and added a motion to dismiss, alternative motions for no-evidence and traditional summary judgment, and a motion to strike. In its plea, the City asserted governmental immunity, official immunity, legislative immunity, lack of standing, lack of a private right of action, no jurisdiction over penal matters, and mootness.

Return Lee to Lee Park and Gann filed an amended petition, alleging additional claims against the City for violating Texas procurement laws by failing to

---

[1] Appellants sued the Mayor and councilmembers in their individual capacities. To the extent that any claims were asserted against the former Mayor and former councilmembers in their official capacities, those officials' successors are substituted. TEX. R. APP. P. 7.2.

[2] For purposes of this opinion, we collectively refer to the City of Dallas, the Mayor, and the Dallas City Council members as "the City."

seek competitive bids when hiring a contractor to remove the Lee Statue and for violating the Texas Open Meetings Act (TOMA) by voting to remove the Lee Statue during a "non-voting" City Council meeting. Plaintiffs sought a declaratory judgment that the Lee Statue and the Pioneer Cemetery were protected state archeological landmarks. They also sought a declaratory judgment that the City Council's resolutions were illegal. The following day, they filed an untimely response to the City's plea and summary judgment motions, stating that their response, their first amended petition, and a separately filed appendix were filed to resolve *some* of the City's motions. The day before the hearing, Return Lee to Lee Park and Gann filed a supplement to their first amended petition to add Johnson as a new plaintiff.

After a hearing, the trial court granted the City's plea to the jurisdiction and summary judgment motion and dismissed with prejudice all of plaintiffs' claims for violations of the Texas Antiquities Code, their request for a declaratory judgment, and their requests for injunctive and mandamus relief. The trial court also granted the City's plea to the jurisdiction and summary judgment motion as to plaintiffs' procurement/competitive bidding claims, dismissing with prejudice the claims of Return Lee to Lee Park and Gann. The trial court reserved for future resolution the City's challenge to plaintiffs' supplementation of their first amended petition and the procurement/competitive bidding claims made by new plaintiff Johnson. In addition, the court reserved for future resolution the plaintiffs' TOMA claims.

The City filed a second supplement to its plea to the jurisdiction and, in the alternative, its amended answer. The City subsequently filed a brief and evidence in support of its plea to jurisdiction, motion to dismiss, and in the alternative, motions for summary judgment, pertaining to plaintiffs' TOMA claims and Johnson's procurement claims. Three days before the hearing, plaintiffs filed an untimely response with no supporting evidence. The trial court conducted a hearing and granted the City's plea and summary judgment motions as to all claims with the exception of the TOMA claims. At that hearing, the trial court requested additional briefing, strictly limited to whether plaintiffs' TOMA claims were moot. After considering the requested briefing from the parties, the trial court entered a final judgment reaffirming its prior orders and granting the City's plea and motions for summary judgment on all remaining issues. Return Lee to Lee Park, Gann, and Johnson timely filed their notice of appeal.

## I. STANDARDS OF REVIEW

### A. Plea to the Jurisdiction

An assertion of governmental immunity implicates a court's subject matter jurisdiction, and such immunity is properly asserted in a plea to the jurisdiction. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). Subject matter jurisdiction is essential to a trial court's authority to decide a case. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). It is never presumed and cannot be waived. *Id*. at 443–44. The existence of subject matter jurisdiction is a question

of law, and we review the trial court's ruling on a plea to the jurisdiction de novo. *Annab*, 547 S.W.3d at 612; *City of Dallas v. E. Vill. Ass'n*, 480 S.W.3d 37, 42 (Tex. App.—Dallas 2015, pet. denied).

A plea to the jurisdiction can be based on the pleadings or on the evidence. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004); *City of Dallas v. Turley*, 316 S.W.3d 762, 767 (Tex. App.—Dallas 2010, pet. denied). When a plea to the jurisdiction challenges the pleadings, we consider whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We look to the allegations in the pleadings, construe them in the plaintiff's favor, and look to the pleader's intent. *See Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff bears the burden to allege facts that affirmatively demonstrate that the trial court has jurisdiction to hear a case. *Turley*, 316 S.W.3d at 767.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional fact issues raised. *Miranda*, 133 S.W.3d at 227. In such case, we are not bound by the plaintiff's factual allegations. *City of Dallas v. Hughes*, 344 S.W.3d 549, 553 (Tex. App.—Dallas 2011, no pet.). This standard mirrors our summary judgment standard under rule 166a of the Texas Rules of Civil Procedure, and it places the burden on the plaintiff to allege facts that affirmatively demonstrate the trial court's jurisdiction. *Miranda*, 133 S.W.3d at 228. The governmental entity

then has the burden to assert and support its contention, with evidence, that the trial court lacks subject matter jurisdiction. *City of Dallas v. Heard*, 252 S.W.3d 98, 102 (Tex. App.—Dallas 2008, pet. denied). If it does so, then the plaintiff must raise a material fact issue regarding jurisdiction to survive the plea to the jurisdiction. *Id*.

**B. Summary Judgment**

We review a summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). We review the summary-judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311–12 (Tex. 2014). When multiple grounds for summary judgment are raised and the trial court does not specify the ground or grounds relied upon for its ruling, the appellate court will affirm the summary judgment if any of the grounds advanced in the motion are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

No-evidence and traditional grounds for summary judgment may be combined in a single motion. *Coleman v. Prospere*, 510 S.W.3d 516, 518 (Tex. App.—Dallas 2014, no pet.). When a party files both a no-evidence and a traditional motion for summary judgment, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. The movant contends that there is no evidence of one or more essential elements of a claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *see also KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). The trial court must grant the motion unless the nonmovant raises a genuine issue of material fact on each challenged element. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). No-evidence summary judgment is proper if the nonmovant fails to bring forward "more than a scintilla of probative evidence" as to an essential element for which the movant contends no evidence exists. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). In a traditional motion for summary judgment, a movant must state specific grounds, and a defendant who conclusively negates at least one essential element of an identified cause of action is entitled to summary judgment. *See* TEX. R. CIV. P. 166a(c); *see also Boerjan*, 436 S.W.3d at 310.

## II. DISCUSSION

Appellants raise three issues for our consideration. In their first and second issues, appellants assert that the trial court erred by dismissing for lack of jurisdiction, and alternatively granting summary judgment in favor of the City, on their claims for violations of the Texas Antiquities Code and the Texas Open Meetings Act. In their third issue, appellants assert that the trial court abused its discretion by refusing to compel the City to respond to discovery requests.

–8–

Appellants raise a variety of interesting arguments, but we are constrained from addressing many of them because appellants did not preserve error in several respects, *see* TEX. R. APP. P. 33.1(a), and appellants did not comply with the Texas Rules of Civil Procedure and the Texas Rules of Evidence. These omissions are fatal to a number of their claims, irrespective of the merit of those claims.

In two interim orders and a final judgment incorporating the court's prior orders, the trial court sustained the City's pleas to the jurisdiction and alternative motions for summary judgment without specifying the grounds for its rulings. We note that although the City presented multiple grounds for its pleas to the jurisdiction and its alternative motions for summary judgment, appellants challenge only a few of those grounds on appeal. In some instances, appellants' brief mentions part of a ground but does not fully address the contentions raised in the trial court.[3]

To succeed on an appeal from a judgment or order granting a plea to the jurisdiction, an appellant must challenge each ground on which the appellee sought judgment and which may have supported the trial court's judgment or order. *S.W. ex rel. A.W. v. Arlington Indep. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort

---

[3] Appellate briefs "are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case." TEX. R. APP. P. 38.9. Briefs are to be liberally, but reasonably, construed so that the right to appeal is not lost by waiver. *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam). Appellate courts have the authority to request additional briefing on an unbriefed issue that was fairly included in or inextricably entwined with a briefed issue. *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 216 (Tex. 2020) (per curiam). However, appellate courts retain authority and discretion to deem an unbriefed point waived in lieu of requesting additional briefing. *Horton*, 519 S.W.3d at 569–70. Whether that discretion has been properly exercised depends on the facts of the case. *Id.*

Worth 2014, no pet.); *see also Deadmon v. Dallas Area Rapid Transit*, 347 S.W.3d 442, 445 (Tex. App.—Dallas 2011, no pet.) ("When . . . a trial court sustains a plea to the jurisdiction without specifying its grounds for doing so, an appellant must challenge each independent ground asserted in the plea."). If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground, *see Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993), and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681–82 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (holding that when a trial court grants, without specifying grounds, a plea to the jurisdiction that is based on multiple grounds, and the appellant does not challenge each ground, the court of appeals must affirm on the unchallenged ground); *see also Deadmon*, 347 S.W.3d at 445 ("Because appellant has not challenged all of the grounds alleged in the plea to the jurisdiction which could, if meritorious, support the order granting the plea, we overrule appellant's sole issue."). We discuss application of these rules in greater detail in our discussion of appellants' issues.

## A. Texas Antiquities Code Claims

In their first issue, appellants assert that the trial court erred by "failing to recognize jurisdiction to hear claims by residents against the City regarding

alteration of undesignated state archeological landmarks." Appellants assert that the Antiquities Act affords Texas citizens the right to bring actions in any court of competent jurisdiction to restrain and enjoin violations of the Act. In their pleadings below, appellants alleged that the City violated, attempted to violate, and conspired to violate the Texas Antiquities Code by removing the Lee Statue and approving the removal of the Confederate Monument without first obtaining a permit to do so from the Texas Historical Commission. *See* TEX. NAT. RES. CODE ANN. § 191.093 ("Landmarks under Section 191.091 or 191.092 of this code are the sole property of the State of Texas and may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee.").

In response to appellants' allegations, the City filed a plea to the jurisdiction, challenging appellants' standing to sue and asserting that it was immune from suit.[4] *See Texas Ass'n of Bus.*, 852 S.W.2d at 443 (standing is a component of subject matter jurisdiction); *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018) (governmental immunity defeats a trial court's subject matter jurisdiction). As discussed further below, although standing and governmental immunity are both "jurisdictional" issues, they present distinct concepts. "A plaintiff seeking to challenge governmental action must establish (1) that he has standing to sue—either under a statutory grant of standing or because he has suffered a particularized injury

---

[4] The City also asserted official immunity, legislative immunity, lack of private right of action, mootness, the political question doctrine, and lack of trial court jurisdiction over penal matters.

–11–

from that governmental action that is distinct from the general public—*and* (2) that sovereign immunity does not bar his challenge—either because the Legislature has waived sovereign immunity or because his claims do not implicate sovereign immunity." *Grossman v. Wolfe*, 578 S.W.3d 250, 258 (Tex. App.—Austin 2019, pet. denied) (emphasis in original) (citing *Bacon v. Tex. Historical Comm'n*, 411 S.W.3d 161, 172 (Tex. App.—Austin 2013, no pet.)).[5] We first consider whether appellants had standing to sue the City for alleged violations of the Antiquities Code.

*Standing*

As a general rule, an individual does not have standing to contest government decision-making because "[g]overnments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (quoting *Osborne v. Keith*, 177 S.W.2d. 198, 200 (Tex. 1944)). Unless standing is conferred by statute, a plaintiff must demonstrate that he or she has suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a governmental

---

[5] The dissent cautions against conflating standing with a decision on the merits. However, when a defendant challenges jurisdiction, this Court is not "required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). "That is the case even when 'jurisdiction and the merits intertwine,' such as when 'a statutory violation is necessary to establish an immunity waiver.'" *Id*. (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018)). Indeed, "disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Miranda*, 133 S.W.3d. at 226.

action or assert a public right. *Id*. at 555–56.[6] Whether a person has standing to maintain a suit is a question of law. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

In this case, appellants did not allege they had common law standing. Instead, they argued that section 191.173 of the Antiquities Code confers standing on citizen plaintiffs like themselves to bring actions for restraining orders and injunctive relief to enjoin violations of that statute. "In conferring statutory standing . . . the legislature may by statute exempt litigants from proof of the 'special injury' required to establish common law standing." *Everett v. TK-Taito, L.L.C*., 178 S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.) (citing *Texas Ass'n of Bus*., 852 S.W.2d at 472). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *Aubrey v. Aubrey*, 523 S.W.3d 299, 311 (Tex. App.—Dallas 2017, no pet.). The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *Everett*, 178 S.W.3d at 851 (citing *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)).

Relevant to appellants' claims, the legislature included the following standing provision in the Antiquities Code: "A citizen of the State of Texas may bring an action in any court of competent jurisdiction for restraining orders and injunctive

---

[6] To establish common law standing, a plaintiff must show "a distinct injury to the plaintiff and 'a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought.'" *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (quoting *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex. 1995)); *see also Texas Ass'n of Bus*., 852 S.W.2d at 446.

relief to restrain and enjoin violations or threatened violations of this chapter, and for the return of items taken in violation of the provisions of this chapter." NAT. RES. § 191.173(a); *see also Grossman*, 578 S.W.3d at 257. In its plea to the jurisdiction, the City argued that appellants have not alleged that they were wronged or injured within the parameters of this statutory grant of standing.

The City asserts that, on the face of appellants' pleadings, there is no possible past or future violation of the Antiquities Code because the Lee Statue and the Confederate Monument are not designated state archeological landmarks. The City urged that state archeological landmark status is possible only if the symbol (1) is listed on the Registry of National Historical Places, and (2) has been designated by the Texas Historical Commission as a state archeological landmark. *See* NAT. RES. § 191.092. The City presented evidence that neither the Lee Statue nor the Confederate Monument was listed on the Registry of National Historical Places and that neither has been designated as a state archeological landmark by the Texas Historical Commission. Therefore, their removal was not subject to the prerequisites to removal set forth in section 191.093. The City argues that if removal of the Lee Statue and the Confederate Monument was not governed by the Antiquities Code, then their removal without first obtaining a permit from the Texas Historical Commission did not violate the Antiquities Code and appellants could not rely upon the statutory grant of standing set forth in section 191.173(a).

Appellants concede that neither the Lee Statue nor the Confederate Monument satisfied either of these conditions. Citing section 191.092(a), they maintain that the Antiquities Code protects relevant historical sites even if they have not been designated as state archeological landmarks. However, they do not address the last portion of subsection (a) that states such sites "are hereby declared to be state archeological landmarks and are *eligible* for designation." NAT. RES. § 191.092(a) (emphasis added).

Appellants were required to allege and show how they had been injured or wronged within the parameters of the language used in the statute conferring standing. *See Everett*, 178 S.W.3d at 851. They did not do so. Instead, appellants argue that the language of the statutory provision should be interpreted expansively to confer standing on citizens to protect all "relevant historical sites." The statutory provision does not support appellants' position. *See* NAT. RES. § 191.173(a).

*Governmental Immunity*

Even if appellants arguably had standing, "standing and sovereign immunity, while both components of subject-matter jurisdiction, are entirely distinct jurisdictional concepts." *Grossman*, 578 S.W.3d at 257–58. To challenge the City's actions, appellants were required to establish that they had standing *and* that governmental immunity did not bar their challenge. *See id*. at 258. Appellants' first issue asks whether the trial court erred by "failing to recognize jurisdiction to hear claims by residents against the City regarding alteration of undesignated state

–15–

archeological landmarks." Although this broad wording could theoretically encompass all of the City's jurisdictional plea grounds, appellants' argument under this issue does not address the governmental immunity component of subject matter jurisdiction with respect to their Antiquities Code claims. Instead, they devote most of their argument to their contention that the City's actions in removing the Lee Statue and the Confederate Monument violated the Antiquities Code.

Sovereign immunity and governmental immunity are related common law doctrines that protect the government from suit. *Hughes v. Tom Green Cty.*, 573 S.W.3d 212, 218 (Tex. 2019). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *see also Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Governmental immunity encompasses both immunity from suit and immunity from liability. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Immunity from suit completely bars actions against governmental entities unless the legislature expressly consents to suit. *Tooke*, 197 S.W.3d at 332.

In its plea to the jurisdiction, the City asserted that appellants failed to plead or establish statutory or constitutional waiver of immunity for their claims against the City. The City argued there is no waiver of governmental immunity because

–16–

nothing within Chapter 191 of the Texas Natural Resources Code (the Texas Antiquities Code) provides a waiver of immunity for suits against municipalities.

The City argued that governmental immunity also bars suit against City officials in their official capacity (official immunity). *See Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011) ("[A]n employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer."). The City asserted that City Council members were immune from suit because individuals acting in their legislative capacity are immune from liability for those actions (legislative immunity). *See In re Perry*, 60 S.W.3d 857, 859 (Tex. 2001) (orig. proceeding). The City also asserted that the issue of what statues should be removed from a local government's parks is a political question. It argued that the political question doctrine implicates jurisdiction and excludes from judicial review those controversies that involve policy choices and value determinations exclusively within the purview of political branches of government. *See American K-9 Detection Servs., LLC v. Freeman*, 556 S.W.3d 246, 253 (Tex. 2018).

Once the City asserted and supported its contention, with evidence, that the trial court lacked subject matter jurisdiction, appellants were required to raise a material fact issue regarding jurisdiction to survive the City's plea to the jurisdiction. *See Heard*, 252 S.W.3d at 102. In their written response to the City's plea, appellants primarily addressed the City's motions for summary judgment. Appellants made a conclusory statement that the Antiquities Code, the Open Meetings Act, and the state

competitive bidding laws "all waive government immunity by their own terms and case law." Appellants did not mention legislative immunity or official immunity at all. Appellants also failed to address the City's argument with respect to the political question doctrine. In their response, appellants stated they would file a separate response to the City's plea to the jurisdiction. However, the record does not contain a separate response. Appellants therefore failed to dispute the immunity pled by the City. That failure is dispositive.

During the trial court's hearing on the City's plea to the jurisdiction, the City argued it had governmental immunity with respect to all of appellants' claims. Appellants did not respond to the City's assertions of immunity, *even when the trial court specifically asked for a response on that issue*. In *Shady Shores*, the Texas Supreme Court instructed:

> when jurisdiction is intertwined with the merits, the evidence supporting jurisdiction and the merits is necessarily intertwined as well. Thus, when a challenge to jurisdiction that implicates the merits is properly made and supported, whether by a plea to the jurisdiction or by a traditional or no-evidence motion for summary judgment, the plaintiff[s] will be required to present sufficient evidence on the merits of [their] claims to create a genuine issue of material fact.

590 S.W.3d at 552. Because appellants did not raise a material fact issue regarding governmental immunity and the trial court's lack of subject matter jurisdiction, the trial court did not err in granting the City's plea to the jurisdiction with respect to appellants' claims that the City violated the Antiquities Code. *Id*. We overrule appellants' first issue.

–18–

## B. Texas Open Meetings Act

In their second issue, appellants assert that the trial court erred by "failing to recognize jurisdiction to hear claims by residents against the City regarding the Texas Open Meetings Act." Appellants' TOMA claims pertain to the Lee Statue only.

Appellants complain that a number of the City's actions with respect to the Lee Statue were TOMA violations. They allege that the City violated TOMA by failing to give seventy-two hours' advance notice of the resolution that was voted on at the September 6th meeting.[7] *See* TEX. GOV'T. CODE ANN. §§ 551.041 ("A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body."), 551.043(a) (notice must be posted in a place readily accessible to general public for at least seventy-two hours before scheduled time of meeting). They acknowledge that the City's posted agenda for the meeting included notice that the City Council would be considering a resolution with respect to Confederate symbols, including a directive to the city manager to immediately remove and store the Lee Statue. However, they urge that the notice was defective because it failed to provide: (1) two-hours' notice of an emergency

---

[7] Appellants' repetitive allegations and arguments are inconsistent and confusing. *See* TEX. R. APP. 38.1(f), (i). In some of their pleadings below and in their appellate brief, appellants assert that the City failed to give seventy-two hours' advance notice of the resolution. In other pleadings and in their appellate brief, appellants acknowledge that the subject matter of the vote (the resolution) was on the agenda notice that was posted on September 1, 2017—more than seventy-two hours in advance of the meeting—but they assert that the notice was defective.

event or (2) notice of a vote to suspend the City Council's rules of procedure. Because the agenda did not contain one or both of these provisions, appellants argue that the City violated TOMA by failing to give written notice of the subject matter of the meeting at least seventy-two hours before the scheduled time of the meeting. They further argue that the resolution should be reversed for violating the notice requirements of TOMA.

Intertwined with their notice argument, appellants allege the City violated TOMA[8] by not following its own rules of procedure by voting on the resolution on a "briefing day," as opposed to a "voting day." The City voted to remove the Lee Statue at the September 6, 2017 City Council meeting—a meeting that was not designated as a "voting day" by the City Council's rules of procedure.

Appellants also complain that the City violated TOMA by conducting a closed or secret meeting prior to the September 6, 2017 City Council meeting to discuss and approve the removal of the Lee Statue and the hiring of a crane operator to do so. Appellants concede they have no evidence that such a secret meeting took place. However, they urge there can be no other explanation for the lack of deliberation at the September 6, 2017 City Council meeting with respect to the removal of the Lee Statue and the fact that a crane had been moved to Oak Lawn Park before the vote on the resolution was taken. Intertwined with their secret-meeting claim, appellants

---

[8] Appellants do not point to a specific TOMA violation; they contend the City's violation of its rules of procedure violates the goal of TOMA to increase public knowledge of government decision-making.

accuse the City of violating procurement law by failing to obtain competitive bids for the removal of the Lee Statue.

In the proceedings below, appellants sought to void the resolution and the City's contract with the company tasked with removing the Lee Statue. In addition, they sought restoration of the status quo—the return of the Lee Statue and the restoration of the former name of Oak Lawn Park to Robert E. Lee Park. On appeal, appellants ask this Court to reverse the City's resolution. They also seek reversal of the trial court's denial of their request for a declaratory judgment that the resolution violated TOMA.

In response to appellants' TOMA claims, the City filed a plea to the jurisdiction, asserting that: (1) appellants' claims were moot; (2) appellants lacked standing to assert claims that the City violated TOMA or the City Council's rules of procedure; and (3) there is no ordinance or statute that creates a private cause of action for claims premised on the City's rules of procedure. The City also argued there was no waiver of governmental immunity, official immunity, or legislative immunity.

The trial court directed the parties to provide additional briefing addressing the issue of the mootness of appellants' TOMA claims. Both parties complied. After consideration of this supplemental briefing, the trial court granted the City's plea to the jurisdiction and alternative motions for summary judgment as to appellants' TOMA claims.

*Mootness*

Like standing, mootness is a component of subject matter jurisdiction. *City of El Paso v. Waterblasting Techs., Inc*., 491 S.W.3d 890, 904 (Tex. App.—El Paso 2016, no pet.). A court lacks subject matter jurisdiction over moot claims. *Heckman*, 369 S.W.3d at 162. "A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer 'live,' or if the parties lack a legally cognizable interest in the outcome." *Id*. In other words, a case is moot when the court's action on the merits cannot affect the parties' rights or interests. *Id*. "If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction." *Id*. (citing *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229–30 (Tex. 1993)).

The City argued that appellants' TOMA claims are moot because the court's action on the merits could not affect the parties' rights or interests and it would be impossible to grant the relief sought. Appellants sought injunctive relief to reverse the resolution and require the City to return the Lee Statue to Oak Lawn Park. However, the City no longer owns or possesses the Lee Statue. The Lee Statue was sold through an auction house; that sale was confirmed by the City Council at a meeting on June 12, 2019. Because it is impossible to restore the Lee Statue to its former location, the City argued that appellants' claim was moot. An issue may be moot if it becomes impossible for the court to grant effectual relief for any reason.

*See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). On appeal, appellants did not address how the sale of the Lee Statue has not rendered their claim for injunctive relief moot.

The City also asserted that appellants' TOMA claim that the City violated procurement laws requiring competitive bidding on the contract to remove the Lee Statue was moot by the time appellants filed their lawsuit. The City produced evidence that the Lee Statue had been removed, the removal contract had been completed, the contractor had been paid, and any purported violation had been resolved by reauthorization. *See Waterblasting Techs.*, 491 S.W.3d at 904 (plaintiffs' claims against city were moot because contract had been fully performed and any judgment on the merits could not affect the rights of plaintiffs or the city). On appeal, appellants did not address how completion of the removal contract and reauthorization by the City Council has not rendered moot their TOMA claim that the City failed to competitively bid the contract to remove the Lee Statue.

To prevail on appeal, appellants were required to attack all independent grounds that supported the trial court's judgment on the City's jurisdictional plea. Appellants did not address the mootness ground in their appellate briefing. Therefore, we "accept the validity of that unchallenged independent ground" and affirm the challenged ruling with respect to appellants' TOMA claims. *See Britton*, 95 S.W.3d at 681–82; *see also Walling*, 863 S.W.2d at 58.

*Private Cause of Action*

Appellants alleged that the City violated City Council procedural rules by voting on the resolution at a meeting that was held on a designated "briefing" day. The City argued that its vote on the resolution complied with its rules of procedure that allow a vote to take place on "briefing days" for "emergencies, construction contracts, construction change orders, architectural and engineering contracts, and architectural and engineering supplemental agreements." The City produced evidence, the minutes from the September 6, 2017 Council Meeting, that referenced the Mayor's explanation that a vote on the resolution would be held in accordance with this procedural rule. The City argued that at most, the vote was a violation of the City Council's procedural rules—not a TOMA violation—and there was no cause of action for such violation.

On appeal, appellants resist this characterization of their claim; they insist that by voting on a briefing day, the City's failure to follow its own procedural rules was a TOMA claim. They do not provide citation to a specific TOMA provision in support of this position. Instead, they argue that TOMA should be enforced liberally to enable public access and increase public knowledge of government decision-making. And they argue that TOMA provides a limited waiver of immunity for interested persons to reverse violations. Given that appellants completely fail to address why their TOMA claims were not moot, their insistence that this was a TOMA claim does not benefit them here.

*Governmental Immunity*

In their second issue, appellants actually address governmental immunity and argue it is waived with regard to their TOMA claims. Citing *Shady Shores*, appellants first contend that TOMA provides a limited waiver of immunity for an interested person to reverse a violation. 544 S.W.3d 426, 437 (Tex. App.—Fort Worth 2018), *rev'd in part*, 590 S.W.3d 544 (Tex. 2019). In its opinion reversing in part the Fort Worth Court of Appeals, the Texas Supreme Court agreed that TOMA "generally provides that an action taken in violation of the Act is 'voidable' but goes on to state very clearly the authorized mechanism to obtain that result: a suit 'by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation' of the Act." *Shady Shores*, 590 S.W.3d at 554. "The Open Meetings Act thus contains a clear and unambiguous waiver of immunity from suits seeking injunctive and mandamus relief." *Id.* (citing *Taylor*, 106 S.W.3d at 696). However, notwithstanding a limited waiver of governmental immunity, appellants' failure to challenge the mootness of such claims is fatal.

Appellants also argue that governmental immunity is waived to enable a plaintiff seeking a declaratory judgment that an entity's action violated TOMA. In *Shady Shores*, the Texas Supreme Court disagreed, stating "the Open Meetings Act's clear and unambiguous waiver of immunity does not extend to suits for declaratory relief." *Id.*

*Ultra Vires Conduct*

In their brief, appellants contend that district courts have jurisdiction over lawsuits for alleged ultra vires acts of a Mayor and City Council members when one or more of the plaintiffs are residents of the city sued and the defendants are members of the City Council, citing *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). However, other than this one sentence generally addressing jurisdiction, appellants' brief contains no complaint, discussion, or argument of ultra vires acts by the Mayor and City Council members with respect to appellants' TOMA claims. Accordingly, we conclude nothing has been presented for our review as to this issue. *See* TEX. R. APP. P. 38.1(i); *see also Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) (stating an appellant's brief must contain a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

As we concluded with respect to appellants' first issue, we also conclude with respect to appellants' second issue that they have failed to challenge all independent grounds raised in the City's jurisdictional plea and on which the trial court could have based its ruling with respect to appellants' TOMA claims. *See Deadmon*, 347 S.W.3d at 445. Accordingly, we overrule appellants' second issue.

## C.    Motion to Compel Discovery

In their third issue, appellants contend that the trial court abused its discretion by refusing to compel the City to respond to appellants' discovery requests.

Appellants' brief provides no legal authority or substantive analysis to support their complaint that the trial court abused its discretion by denying their motion to compel discovery. As for citation to the record, appellants provide a general citation to approximately thirty pages in the record. They suggest that this Court may review their "motion to compel and attendant documents" in the record.

The Texas Rules of Appellate Procedure dictate the required contents and organization of an appellant's brief. *See* TEX. R. APP. P. 38.1; *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). An appellant's brief must concisely state all issues or points presented for review and, among other things, must contain a clear, concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). We may not speculate as to the substance of the specific issues asserted by an appellant, and we may not make a party's argument for him. *Strange*, 126 S.W.3d at 678. "Bare assertions of error, without argument or authority, waive any error." *In re S.V.*, 599 S.W.3d 25, 41 (Tex. App.—Dallas 2017, pet. denied). This Court has no duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred. *Strange*, 126 S.W.3d at 678. Further, "[t]his court does not have a duty to review a voluminous record without guidance from the appellant to determine whether its assertion of reversible error is valid." *Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861 (Tex. App.—Dallas 2012, no pet.).

Appellants failed to provide a clear, concise argument that the trial court erred by failing to grant their motion to compel, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). Accordingly, they waived any complaint as to the trial court's ruling on this motion. We overrule appellants' third issue.

### III.  CONCLUSION

Having resolved all of appellants' issues against them, we affirm the trial court's judgment.

190456f.p05

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

Whitehill, J., concurring and dissenting



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RETURN LEE TO LEE PARK,
WARREN JOHNSON, and
KATHERINE GANN, Appellants

No. 05-19-00456-CV      V.

MIKE RAWLINGS, SCOTT
GRIGGS, ADAM MEDRANO,
CASEY THOMAS II, DWAINE
CARAWAY, RICKEY
CALLAHAN, OMAR NARVAEZ,
KEVIN FELDER, TENNELL
ATKINS, MARK CLAYTON,
ADAM MCGOUGH, LEE
KLEINMAN, SANDY GREYSON,
JENNIFER GATES, PHILIP
KINGSTON, AND THE CITY OF
DALLAS, Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-05460.
Opinion delivered by Justice
Pedersen, III. Justices Myers and
Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees MIKE RAWLINGS, SCOTT GRIGGS, ADAM MEDRANO, CASEY THOMAS II, DWAINE CARAWAY, RICKEY CALLAHAN, OMAR NARVAEZ, KEVIN FELDER, TENNELL ATKINS, MARK CLAYTON, ADAM MCGOUGH, LEE KLEINMAN, SANDY GREYSON, JENNIFER GATES, PHILIP KINGSTON, AND THE CITY OF DALLAS recover their costs of this appeal from appellants RETURN LEE TO LEE PARK, WARREN JOHNSON, and KATHERINE GANN.

Judgment entered this 28th day of December, 2020.